IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN A. BREWINGTON, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY | : | No. 21-cv-5482 |
| | : | |

**MEMORANDUM OPINION**

**CRAIG M. STRAW**                                                **January 29, 2024**
**United States Magistrate Judge**

     Carolyn A. Brewington seeks review of the Commissioner's decision denying her application for Disability Insurance Benefits (DIB).  The parties consented to proceed before a Magistrate Judge[1] and the matter was assigned to me.[2]  For the following reasons, I deny Brewington's request for review and affirm the Commissioner's decision.

**I.**    **PROCEDURAL HISTORY**

     On September 17, 2019, Brewington filed an application for DIB under the Social Security Act, alleging disability beginning the same day.  R. 15; 60; 69.  The claim was denied initially on January 24, 2020, and again on reconsideration.  R. 15; 81-84; 87.  Brewington filed a written request for a hearing.  R. 95; 123.  On January 28, 2021, a hearing took place over the phone before ALJ Regina Warren because of the Covid-19 Pandemic.  R. 30; 32; 98; 103.  Brewington appeared with her counsel, Thomas Giordano, Jr.  R. 32; 90-94.  Vocational Expert (VE) Sherry Kristal-Turetzky testified at the hearing.  R. 32; 47.

---

[1] See Docs. 4 & 14; 28 U.S.C. § 636(c) & Fed. R. Civ. P. 73.
[2] I was reassigned the case from Magistrate Judge David R. Strawbridge on July 27, 2023.  Doc. 12.

The ALJ issued a decision denying benefits. R. 15-25. Brewington filed a request for review of the ALJ's decision, which was denied. R. 1. Thus, the ALJ's decision became the final decision of the Commissioner of Social Security. R. 1-3; 20 C.F.R. § 404.981. Brewington's counsel then filed this action in federal court. Doc. 1. Brewington filed a Brief and Statement of Issues in Support of Request for Review. Doc. 8. Defendant filed a Response to Plaintiff's Request for Review. Doc. 11. No reply brief was filed.

## II.    **LEGAL STANDARDS**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Commissioner employs a five-step sequential process to determine if a claimant is disabled, evaluating:

1.    Whether the claimant is currently engaged in substantial gainful activity;

2.    If not, whether the claimant has a "severe impairment" that significantly limits their physical or mental ability to perform basic work activities;

3.    If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings," see 20 C.F.R. pt. 404, subpt. P, app. 1), which results in a presumption of disability;

4.    If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity (RFC) to perform their past work; and

5.    If the claimant cannot perform their past work, whether there is other work in the national economy that the claimant can perform based on the claimant's age, education, and work experience.

2

See Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014); 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to establish that the claimant can perform other jobs in the local and national economies based on their age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  See 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" and must be "'more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Zirnsak, 777 F.3d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (additional citations omitted)).  It is a deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (citing Schaudeck, 181 F.3d at 431).

## III.    ALJ'S DECISION AND PLAINTIFF'S REQUEST FOR REVIEW

The ALJ determined that Brewington acquired sufficient quarters of coverage to remain insured through December 31, 2024.  R. 15.  At the hearing, Giordano moved and the ALJ amended the alleged onset disability date (AOD) to July 8, 2020.  R. 15; 36; 40.  The ALJ found that Brewington has not engaged in any substantial gainful employment since the AOD.  R. 16-17.

3

The ALJ noted Brewington had several severe impairments including degenerative disc disease of the cervical and lumbar spine, disorder of joints in the bilateral upper extremities, and obesity.[3]  R. 17; 20 C.F.R. § 404.1520(c).  The ALJ decided that Brewington's impairments, either singly or in combination, did not meet or medically equal any of the Listings.[4]  R. 18; 20 C.F.R. pt. 404, subpt. P, app. 1; see also 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

Considering the entire record, the ALJ found that Brewington had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could occasionally stoop and climb ladders or stairs, frequently kneel, balance, and crouch, and crawl on an unlimited basis. R. 21.  Brewington could also frequently reach overhead, reach in all directions, and perform gross and fine fingering and feeling with the bilateral upper extremities.  Id.  The ALJ opined that Brewington should avoid vibrations, hazards, and unprotected heights.  Id.  The ALJ then decided Brewington could perform her past relevant work as a proof-machine-operator supervisor[5] and a statement clerk[6] because the work did not require the performance of work-related activities precluded by Brewington's RFC.  R. 24; see 20 C.F.R. § 404.1565.  Therefore, the ALJ found that Brewington was not disabled.  R. 25.

---

[3] The ALJ found Brewington's other physical impairments were not severe and that Brewington's anxiety and depression were not medically determinable impairments of record. R. 18.  The ALJ stated she considered all the medically determinable impairments, including those that were not severe, when formulating Brewington's RFC.  Id.

[4] The ALJ discussed in detail Listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), Listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), and Listing 1.18 (abnormality of a major joint(s) in any extremity), but found Brewington's impairments were not as severe as the Listings required.  See R. 19-20.

[5] Proof-machine-operator supervisor is a skilled, sedentary position.  See Dictionary of Occupational Titles (DOT) (4th ed. rev. 1991) 217.382-010; R. 49.

[6] A statement clerk is a semi-skilled, sedentary position.  See DOT 216.362-046; R. 50.

In her request for review, Brewington argues the ALJ did not properly evaluate the medical opinion evidence of Nurse Practitioner (NP) Teresa Ingram.  Doc. 8, at 3-12.  Moreover, Brewington contends the ALJ failed to properly evaluate her subjective symptoms of pain.  Id. at 12-19.  The Commissioner counters that substantial evidence supports the ALJ's analysis of NP Ingram's medical opinion and her assessment of Brewington's subjective complaints.  Doc. 11, at 3-16.

## IV.   FACTUAL BACKGROUND

Brewington was of "advanced age" when she filed her application for disability benefits.  R. 38; 60; 20 C.F.R. § 404.1563(e).  Brewington has a high school education.  R. 175.  Brewington's prior work, which took place over a span of several years, includes a proof machine operator supervisor and a statement clerk.  R. 24; 49-50; 171-72.  Brewington worked approximately twenty years before the onset of her disability.  R. 171-72.

### A.  Medical evidence[7]

#### 1.  Lower back

Brewington has a history of lower back pain that began when she fell off a ladder twenty years ago.  R. 22; 285; 338; 620.  The pain began worsening in 2016.  R. 620.  Brewington went to pain management appointments for her back regularly in 2018 and 2019.  R. 22; 338; 344; 349; 355; 360; 365; 370; 375; 380; 386; 392; 398; 404; 411; 418; 425; 431; 438.  Brewington underwent an MRI of the lumbar spine in March 2019, which showed multilevel degenerative spondylosis, the worst at L3-L4, where she had compression of the nerve root.  R. 22; 486.

---

[7] Here, I outline only the pertinent medical evidence related to the issues raised on appeal, along with some limited additional medical information as background.

Throughout 2018 and 2019, Brewington received several epidural steroid injections to treat her back pain.  R. 22; 270; 296; 458; 484.

At her July 2019 pain management appointment, Brewington complained of lower back pain radiating to her bilateral lower extremities, numbness and tingling in the legs, and weakness in her right lower extremity.  R. 22; 438.  The physical examination revealed a 15% to 20% reduction of range of motion in the lumbar spine, moderate to significant tightness and stiffness on lumbosacral paraspinal muscles upon palpitation, some trigger points and muscle spasms, straight leg test on left side on supine position was positive, and she had an antalgic gait to the left side.  R. 22; 440.  Brewington had the same pain complaints and similar findings at her subsequent pain management appointments.  R. 22; 447; 452-54; 458-61; 465-66; 472-74.  Brewington continued receiving lumbar steroid injections in 2020.  R. 22; 649-50; 784; 791.

On July 8, 2020, Brewington suffered a work-related injury.  R. 41; 676; 691; 703.  After attending a meeting that caused her anxiety, she returned to her desk, became dizzy, experienced blurred vision, heart palpitations, and chest tightness, and hyperventilated.  R. 41; 676; 691.  When Brewington stood up to get water, she passed out and hit her head on her desk.  Id.  After a three day stay at Cooper Hospital, the doctors ruled out cardiogenic and neurologic causes and determined the incident was related to stress.  R. 676; 691; 703.  The incident caused Brewington new neck pain and exacerbated her chronic lower back pain.  R. 676; 691; 703; 804.

At a July 17, 2020 appointment with her pain management team, Brewington continued to complain of lower back pain which she described as stiffness, aching, stabbing, and throbbing.  R. 22; 703.  She reported the back pain occurs constantly throughout the day, but gets worse when walking, standing, lying down, sitting, bending forwards and backwards, driving, with

weather changes, and when lifting a heavy weight.  Id.  On examination, Brewington was wearing a hard cervical collar, had 40-50% reduction of range of motion in her lumbar spine, moderate to significant tightness on lumbosacral muscles upon palpitation, some trigger points and muscle spasms, and positive straight leg raise on her right side.  R. 22; 704-05.  Brewington, however, had regular sensation, reflexes, and motor strength in her upper and lower extremities. R. 705.  The pain medicine provider ordered a lumbar brace.  R. 22; 708.

Brewington underwent another MRI of her lumbar spine on August 20, 2020.  R. 22; 787. The MRI showed disc herniations at L5-S1, L4-L5, L3-L4, along with foraminal stenosis and canal stenosis.  R. 22; 790.  A few days later, Brewington had a cervical spine MRI.  R. 22; 786. That MRI also showed disc herniations at C4-C5, C5-C6, and C7-T1 that impinged on Brewington's cord.  Id.

At an August 2020 pain management appointment, the range of motion for Brewington's cervical spine and lumbar spine was reduced about 40-50% and she had multiple trigger points and muscle spasms.  R. 22; 686.  Brewington also had slightly decreased strength in her upper right extremity and the sensation in her upper right extremity was altered or absent.  Id. Brewington reported at an August 2020 neurology appointment with Dr. Sudhir Aggarwal, M.D., pain in her neck primarily on her left side that radiated down her left upper extremity.  R. 22; 612.  The exam showed normal findings, including intact gait, but showed spasm in the paraspinal muscles of Brewington's upper back and diminished sensation in her distal lower extremities.  R. 22; 613.  Brewington reported at her September 2020 pain management appointment poor pain control of her new work-related cervical spine injuries.  R. 22; 669.

Therefore, Brewington began physical therapy (PT) in November 2020 for her spine and lower back.  R. 22; 862.

Brewington continued seeing her pain management provider monthly through 2020.  R. 22; 649; 658; 668; 676.  At her November 2020 appointment, Brewington had a 50-60% range of motion in her lumbar spine.  R. 660.  In December 2020, Brewington reported pain relief from the lumbar epidural injections but said PT was exacerbating her neck and back pain.  R. 649-50.  The physical exam showed Brewington had reduced cervical range of motion, tenderness to palpitation in the cervical facet joints and trigger points with spasm throughout the spine.  R. 651.  She also had slightly decreased motor strength in her right upper extremity, decreased range of motion in her lumbar spine, seated positive straight leg raise, and slightly decreased strength in her bilateral lower extremities.  Id.  Brewington's grip strength in her right and left upper extremities was within normal limits, her left upper extremity had normal sensation, but her right upper extremity had altered or absent sensation.  Id.

When Brewington no longer received relief from the steroid injections, she scheduled a Spinal Cord Stimulator (SCS) trial in January 2021.  R. 653.  Brewington was scheduled for SCS surgery but did not undergo the surgery before her insurance lapsed.  R. 46-47.

On January 6, 2021, NP Ingram—one of Brewington's pain management nurses— completed a Medical Source Statement of Ability to Do Work-Related Activities (MSS).  R. 885-86.  NP Ingram reported that Brewington had been a patient of Relievus, Advanced Spine and Pain (Relievus) monthly for more than three years.  R. 885.  The diagnoses listed were lumbar radiculopathy and lumbar spondylosis with symptoms including low back pain radiating to bilateral lower extremities.  Id.  The MSS provided Brewington could sit for 2-4 hours in an 8-

8

hour workday, stand/walk for 2 hours in an 8-hour workday, and must periodically alternate between sitting and standing to relieve discomfort every fifteen minutes.  Id.  The MSS noted Brewington could rarely lift/carry less than ten pounds, never lift/carry more than that, never push or pull with her upper and lower extremities, and rarely reach in all directions.  Id. Brewington could, however, frequently handle, finger, and feel.  Id.  Brewington could frequently focus and concentrate but would be absent four or more days a month due to her impairments and/or treatment.  Id. at 886.  NP Ingram opined that no accommodations were applicable because Brewington was "currently totally disabled."  Id.  The objective findings, clinical observations, and symptomology supporting her assessment included: "decreased ROM[8] lumbar spine, + lumbar facet maneuver, seated straight leg raise + at 30° bilaterally, + SI[9] joint tenderness.  DTRS[10] ¼ bilateral lower extremities, decreased motor strength bilateral lower extremities.  Altered sensation in right lower extremity."  Id.

### 2.  Upper extremities

When Brewington passed out at work in July 2020, she hit the right side of her body.  R. 638.  Shortly thereafter, Brewington saw a hand surgeon to evaluate the painful triggering of her right thumb.  Id.  She elected to undergo a right trigger thumb release surgery on August 5, 2020. R. 640.  Despite a little stiffness and soreness, as of August 24, 2020 Brewington had no further triggering.  R. 636.  Brewington was released from the doctor's active care as of November 16, 2020 with "no triggering of her thumb and full motion."  R. 635.

---

[8] ROM stands for range of motion.
[9] SI refers to sacroiliac joints.
[10] DTRS is deep tendon reflex.

### B.  Non-medical evidence

Brewington testified that she has lower back pain all day.  R. 46; 194; 203.  Brewington has difficulty walking up and down stairs and testified once she is upstairs or downstairs, she stays there for awhile.  R. 46.  Brewington cannot vacuum, lift clothes in a basket, or cook a full meal.  R. 46; 196.  Brewington is unable to stand on her feet for over thirty minutes.  R. 46. Brewington cannot lift more than ten pounds, squatting and bending causes pain, reaching pulls her lower back and walking hurts it, and she cannot bend to kneel.  R. 199; 203.  Brewington takes medication, including Percocet, for chronic pain.  R. 194; 217; 231.  Her chronic pain makes sleeping unbearable and "pain shoots down [her] legs."  R. 195.  Brewington wears a back brace four hours on and four hours off every day.  R. 197; 200; 202.  Brewington watches TV, reads, talks to her children and grandchildren, and attends church (although it is painful for her to sit for long periods of time at church).  R. 198.  She is unable to go to the movies, dance, or walk around in a store.  R. 199.

## V.  <u>DISCUSSION</u>

### A.  The ALJ properly evaluated and considered the opinion of NP Ingram when determining Brewington's RFC and the decision is supported by substantial evidence.

Brewington's first general claim is that the ALJ did not properly evaluate and weigh NP Ingram's opinion.  Doc. 8, at 3-10.  In addressing this claim, I find that all of her arguments lack merit.

An RFC assessment is the most a claimant can do in a work setting despite the limitations caused by his or her impairments.  20 C.F.R. § 404.1545(a)(1).  The RFC is based on all the relevant and other evidence in the case record.  <u>Id.</u> § 404.1545(a)(3).  It is the ALJ's exclusive

responsibility to determine the claimant's RFC.  20 C.F.R. § 404.1546(c).  An ALJ must include in the RFC any credibly established limitations the record supports.  <u>Salles v. Comm'r of Soc. Sec.</u>, 229 F. App'x 140, 147 (3d Cir. 2007).

The ALJ's RFC assessment must be "'accompanied by a clear and satisfactory explication of the basis on which it rests.'"  <u>Fargnoli v. Massanari,</u> 247 F.3d 34, 41 (3d Cir. 2001) (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)).  Nevertheless, the ALJ is not required to discuss or refer to every piece of the relevant evidence in the record when assessing an RFC.  <u>Id.</u> at 42.  Once an ALJ has made an RFC determination it will not be set aside provided substantial evidence supports the RFC.  <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002).

An "ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources.'"[11]  <u>Thomas v. Kijakazi</u>, No. 21-cv-3547, 2022 WL 17880922, at *6 (E.D. Pa. Dec. 22, 2022) (quoting <u>Cheryl F. v. Kijakazi</u>, No. 20-cv-16052, 2022 WL 17155681, at *10 (D.N.J. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(a)).  Instead, the ALJ must evaluate the persuasiveness of the opinion based on five factors set forth in 20 C.F.R. § 404.1520c(c).  <u>See</u> <u>Thomas</u>, 2022 WL 17880922, at *6; <u>see also</u> <u>Lawrence v. Comm'r of Soc.</u>

---

[11] The prior regulations provided that more weight should be given to treating sources.  <u>See</u> 20 C.F.R. § 404.1527.  Effective March 27, 2017, the SSA amended the rules addressing the evaluation of medical evidence and eliminated the assignment of more weight to certain medical opinions.  <u>See</u> Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  Now five factors are considered for disability claims filed on or after March 27, 2017.  <u>See</u> 20 C.F.R. § 404.1520c(c).  Here, the claim was filed on September 17, 2019, so the five-factor test applies.  <u>See</u> R. 15; 160.

Sec., No. 21-cv-01239, 2022 WL 17093943, at *4 (M.D. Pa. Nov. 21, 2022) ("Rather than assigning weight to medical opinions, [an ALJ] will articulate how persuasive he or she finds the medical opinions.") (alteration in original) (citations and internal quotations omitted).  The factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating relationship and the frequency of exams; (4) the medical source's specialization; and (5) other factors including but not limited to the source's familiarity with the other evidence in a claim or an understanding of the disability program's policy and evidentiary requirements.  20 C.F.R. § 404.1520c(c).  The most important factors when determining the persuasiveness of a medical opinion are supportability and consistency.  Id. § 404.1520c(a); Rose v. Kijakazi, No. 20-3222, 2022 WL 910093, at *5 (E.D. Pa. March 29, 2022).

Supportability means "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source."  Cota v. Kijakazi, No. 21-cv-672, 2022 WL 3686593, at *5 (M.D. Pa. Aug. 25, 2022); 20 C.F.R. § 404.1520c(c)(1).  As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  Consistency means "the extent to which the medical source's opinion is consistent with the record as a whole."  Cota, 2022 WL 3686593, at *5; 20 C.F.R. § 404.1520c(c)(2).  Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §

404.1520c(c)(2).  A key difference between the two is that "supportability considers the evidence and explanations 'presented b[y] a medical source' whereas consistency looks at 'evidence from other medical sources and nonmedical sources in the claim . . . .'"  Gongon v. Kijakazi, 22-cv-384, 2023 WL 3919467, at *13 (E.D. Pa. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)-(2)).

The ALJ is only required to explain the supportability and consistency factors in the written opinion.  20 C.F.R. § 404.1520c(b)(2).  Even though the ALJ is not bound to accept any physicians' conclusions, the ALJ "'may not reject them unless [he] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'"  Balthasar v. Kijakazi, No. 20-cv-06181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022) (quoting Cadillac v. Barnhart, 84 F. App'x 163, 168 (3d Cir. 2003) (additional quotations and citations omitted)); see also Densberger v. Saul, No. 20-cv-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) ("[P]rovided that the decision is accompanied by an adequate, articulated reason, it is the province and duty of ALJ to choose which medical opinions and evidence deserve greater weight.").

When determining Brewington's RFC, the ALJ considered the opinions of state agency medical consultants Ruth Arnold, D.O., and Kevin Hollick, D.O., and found them somewhat persuasive.  R. 23.  Namely, the ALJ stated:

> State agency medical consultant Ruth Arnold, D.O., reviewed the evidence and opined the claimant could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours; and sit about six hours.  She opined that claimant could occasionally climb and stoop, and balance frequently.  On reconsideration, consultant Kevin Hollick, D.O. opined that claimant could lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours; and sit about six hours.  He opined the claimant could occasionally balance, stoop, and climb ladders, ropes, or scaffolds.

Finally, Dr. Hollick opined the claimant should avoid concentrated exposure to vibrations and hazards.  The undersigned finds these opinions somewhat persuasive but finds support for greater restrictions on the use of the upper extremities.  At her pain management appointment on July 2019, the claimant complained of low back pain radiating to the bilateral lower extremities, numbness and tingling in the legs, and weakness in the right lower extremity.  The claimant had examinations showing slightly decreased strength in the bilateral upper extremities and bilateral lower extremities.  On August 5, 2020, she underwent a right trigger thumb release.  As such, the evidence supports that she is restricted to frequent use of the upper extremities for reaching, fingering, and feeling.  These opinions are persuasive to the extent they are consistent with the evidence.

R. 23 (internal citations omitted).

The ALJ also extensively discussed the opinion of NP Ingram.  R. 24.  The decision provides:

In January 2021, the claimant's pain management nurse practitioner, Teresa Ingram, completed an assessment of the claimant's work related abilities.  She opined that claimant could sit two to four hours, stand and/or walk two hours, and would need to change positions from sitting to standing every 15 minutes.  She opined the claimant could lift less than 10 pounds rarely, never lift greater than 10 pounds, and never push or pull with the upper or lower extremities.  According to Ms. Ingram, the claimant could rarely reach, but frequently handle, finger, and feel.  Finally, she opined the claimant would have frequent interference in focus and concentration and would have absences four or more days per month[ ].  The determination of disability is an issue reserved to the Commissioner.  Therefore, this portion of her opinion is evidence that is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520c.  The remainder of her opinion is not persuasive because it is more restrictive than supported by the evidence.  Ms. Ingram based her opinion on findings of range of motion in the lumbar spine, positive straight leg raise, tenderness to palpation, decreased motor strength, and altered sensation in the right lower extremity.  The claimant had examinations showing slightly decreased strength in the bilateral upper extremities and bilateral lower extremities.  On one exam, she had evidence of diminished sensation in the distal lower

14

extremities.  There is no documented need for a walker, bilateral
canes, bilateral crutches, or wheeled and seated mobility device.
The claimant has full grip strength and there is no evidence of the
inability to use the upper extremities.  The evidence is not
consistent with the degree of limitation opined by Dr. Ingram.  Her
opinion is not persuasive because it is not supported by the
evidence.

R. 24 (internal citations omitted).

Ultimately, the ALJ determined that Brewington had the RFC to perform light work[12]

with some restrictions—she could occasionally stoop and climb ladders or stairs, frequently

kneel, balance, and crouch, and crawl on an unlimited basis.  R. 21.  The ALJ also found that

Brewington could reach overhead, reach in all directions, perform gross and fine fingering and

feeling with the bilateral upper extremities, but should avoid vibrations, hazards, and unprotected

heights.  Id.

Brewington first argues that the ALJ did not properly consider and evaluate NP Ingram's

opinion pursuant to the applicable regulations and case law.  Doc. 8, at 3-5.  The ALJ sufficiently

evaluated NP Ingram's opinion[13] when she discussed the persuasiveness of the medical sources

in the record.  See 20 C.F.R. § 404.1520c(b); R. 23-24.  The ALJ considered the supportability

---

[12] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls.  To be considered capable
of performing a full or wide range of light work, [a claimant] must have the ability to do
substantially all of these activities.  If someone can do light work, we determine that he or she
can also do sedentary work, unless there are additional limiting factors such as a loss of fine
dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).
[13] As a preliminary matter, NP Ingram is a medical source, see 20 C.F.R. § 404.1502(a)(7), and
her opinion constitutes a medical opinion for the analysis here.

and consistency factors when she weighed NP Ingram's opinion as the regulations and case law require.  See 20 C.F.R. § 404.1520c(c)(1), (2); Thomas, 2022 WL 17880922, at *6.

The ALJ found that NP Ingram's opinion was not persuasive because it was based on "decreased range of motion in the lumbar spine, positive straight leg raise, tenderness to palpation, decreased motor strength, and altered sensation in the right lower extremity," and one exam showing evidence of diminished sensation in the distal lower extremities.  R. 24; 613.  The ALJ, however, noted that the medical record did not include any "documented need for a walker, bilateral canes, bilateral crutches, or wheeled or seated mobility device," which indicated NP Ingram's limitation regarding Brewington's walking ability was more restrictive than supported by the record evidence as a whole.  R. 24; 20 C.F.R. § 404.1520c(c)(2).  The ALJ mentioned that Brewington also had close to full motor strength in her lower extremities and did not exhibit coordination or gait issues on many occasions, including at neurology exams on July 23, 2020 and August 28, 2020.[14]  R. 24; 613; 615-16; 20 C.F.R. § 404.1520c(c)(1).  Additionally, Brewington reported that steroid injections in her lumbar spine provided some relief.  R. 649-50; 703.  Although NP Ingram opined that Brewington could rarely lift less than ten pounds, could never pull or push with upper extremities, and could rarely reach (but frequently handle, finger, and feel), the ALJ did not find the record supported any upper extremity restriction because Brewington had full grip strength and no evidence of inability to use her upper extremities.  R.

---

[14] Progress notes from several of Brewington's pain management visits, however, reported Brewington had an "antalgic gait to the left side."  R. 652; 660; 671; 678; 686; 693; 705; 727; 735; 743; 751.

24; 651.[15]  Indeed, Brewington reported no issues with her right thumb as of November 2020 after the trigger release surgery.  R. 635; 640.  For these reasons, the ALJ adequately explained why she found NP Ingram's opinion unpersuasive compared to others based on the supportability and consistency factors.  See Densberger, 2021 WL 1172982, at *8.

Brewington also contends that NP Ingram, as a treating source, described greater limitations than those the ALJ adopted and established her disability with her opinion.  Doc. 8, at 5-10.  NP Ingram opined that, based on her findings, Brewington was totally disabled.  But the decision whether Brewington is disabled or unable to work is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(d)(1).  Hence, the ALJ was correct that NP Ingram's opinion is not considered proper medical opinion evidence to the extent it included this conclusory statement regarding Brewington's disability.  See Reed v. Berryhill, 337 F. Supp. 3d 525, 528 (E.D. Pa. 2018) (stating medical source expressing conclusory statement about claimant's disability is not medical opinion evidence); 20 C.F.R. § 404.1520b(c)(3).

Brewington also submits that NP Ingram found greater limitations than the ALJ and Brewington met her burden to prove she is disabled.  Doc. 8, at 5.  Essentially, she is claiming evidence exists in the record to contradict the ALJ's findings.  This Court will not re-weigh the evidence presented to the ALJ or substitute its own conclusions for those of the factfinder.  See Rutherford, 399 F.3d at 552.  In other words, an ALJ's findings of fact will be affirmed provided they are supported by substantial evidence, even if the Court, acting de novo, might have reached a conclusion different than the ALJ.  See Zirnsak, 777 F.3d at 611; Mejia v. Kijakazi, 643 F.

---

[15] While Brewington's sensation in her right upper extremity was described as "altered or absent" at a December 2020 pain management appointment, her motor strength was evaluated as "4-5/5" (right) and "5/5" (left).  R. 651.

Supp. 3d 512, 517 (E.D. Pa. 2022). The inquiry for the Court is not whether the Court would decide the same way as the ALJ, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Therefore, even taking as true Brewington's argument that other evidence in the record supports a different result, it is the Court's job only to determine whether substantial evidence supports the ALJ's decision, not whether evidence supports a different result. See Sanchez v. Barnhart, 186 F. App'x 187, 191 (3d Cir. 2006) (citation omitted) (noting "[w]here evidence in the record is susceptible to more than one rational interpretation, the Court must endorse the Commissioner's conclusion."). Here, as explained previously, the ALJ's findings are supported by substantial evidence. Accordingly, Brewington's claim is groundless.

Finally, Brewington asserts that the ALJ unreasonably relied on the administrative findings of Drs. Arnold and Hollick. Doc. 8, at 11-12. She asserts that NP Ingram's opinion is at least as persuasive as the administrative findings and thus the ALJ had to consider all the factors under the persuasiveness test. See generally 20 C.F.R. § 404.1520c(b), (c). The applicable regulation, 20 C.F.R. § 404.1520c(b)(3), provides the ALJ need only address the persuasiveness factors when he or she finds a medical opinion that is equally supported and consistent with the record medical opinions or prior administrative medical findings about the same issue. That did not happen here. The ALJ did not find NP Ingram's and the administrative findings of Dr. Arnold and Dr. Hollick equally persuasive. See R. 23-24.[16] As a result, the ALJ

_____

[16] The ALJ determined Dr. Arnold and Dr. Hollick's findings were somewhat persuasive as consistent with the evidence in the record based on Brewington's complaints of lower back pain radiating to the bilateral lower extremities, numbness and tingling in the legs, weakness in the right lower extremity, and examinations showing slightly decreased strength in her bilateral

was not obligated to address all the factors.  See 20 C.F.R. § 404.1520c(b)(3).  Therefore, Brewington's assertion lacks merit.

The ALJ did not err when it evaluated NP Ingram's opinion and the ALJ's RFC is supported by substantial evidence in the record.  Accordingly, Brewington's first claim fails.

**B.  The ALJ properly considered Brewington's subjective complaints of pain.**

Brewington next argues the ALJ improperly rejected her statements regarding the intensity, persistence, and limiting effects of her symptoms, and found, in error, that they were not consistent with the record.  Doc. 8, at 15.

When she formulated Brewington's RFC, the ALJ discussed Brewington's subjective statements regarding her symptoms of pain.  R. 21.  Specifically, the ALJ stated:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p.  The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c.

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques-- that could reasonably be expected to produce the claimant's pain or other symptoms.

---

upper extremities and lower extremities and diminished sensation in her distal lower extremities. R. 23; 438; 651-52; 686.  Dr. Arnold and Dr. Hollick found that Brewington could stand and/or walk about six hours in an eight-hour workday.  R. 23; 65; 75.  Regarding Brewington's upper extremities, the ALJ found support for greater restrictions than those proposed by Dr. Arnold and Dr. Hollick and accounted for the restrictions by limiting Brewington to frequent use of her upper extremities for reaching, fingering, and feeling.  R. 23.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms have been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The claimant alleged that she cannot work because of lumbar degenerative disc disease, urinary frequency, and trigger finger. She said she experiences low back pain, leg pain and numbness, and fatigue. She claimed that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. The claimant reported that she had difficulty sleeping, caring for personal needs, making meals, and completing household chores. She said she attends church but has difficulty doing so because of pain with sitting for long period. The claimant stated that she does not handle stress or changes in routine well. She reported that she wears a back brace throughout the day.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision.

R. 21 (internal citations omitted). The ALJ then pointed out specific evidence in the record to support her findings as explained below. See R. 22-23.

To evaluate a claimant's symptoms, first it is determined whether a claimant has "a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." Social Security Ruling 16-3P: Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016).

The ALJ then evaluates the intensity and persistence of an individual's symptoms such as pain and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities.  Id. at *4-5.  In addition to the objective medical evidence in the record, at the second step the ALJ considers factors relevant to the claimant's symptoms including: (1) daily activities; (2) location, duration, and frequency of pain and other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication; (5) treatment, other than medication; (6) other measures taken to relieve pain; and (7) other factors.  See 20 C.F.R. § 404.1529(c)(3)(i)–(vii).

"It is well-established that an ALJ is required to 'give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence.'"  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)).  Nevertheless, a claimant's own statements about pain or other symptoms are not sufficient, by themselves, to establish that the claimant is disabled.  See 20 C.F.R. § 404.1529(a).  An ALJ may discount subjective complaints if they are inconsistent with the objective medical evidence.  Id.; see also Weber v. Massanari, 156 F. Supp. 2d 475, 485 (E.D. Pa. 2001) (explaining an ALJ "has the right, as the fact finder, to reject partially, or even entirely" subjective complaints if they are not fully credible).  An ALJ's conclusion regarding a claimant's subjective complaints of pain is entitled to great deference because the ALJ saw the hearing up close, and the decision will be upheld as long as substantial evidence supports the conclusion.  See Biestek, 139 S. Ct. at 1157; Horodenski v. Comm'r of Soc. Sec., 215 F. App'x 183, 189 (3d Cir. 2007); see also Cosme v. Comm'r of Soc. Sec., 845 F.

App'x 128, 133-34 (3d Cir. 2021) (holding substantial evidence, including opinions of medical doctors, supported ALJ's decision to discount claimant's subjective complaints).

The ALJ followed the two-step process in this case.  The ALJ determined that Brewington's physical impairments of lumbar degenerative disc disease, lower back pain, leg pain, numbness, fatigue, and trigger finger could reasonably be expected to cause Brewington's symptoms of pain.  R. 21; 36-38; 174; 194.  The ALJ then considered Brewington's statements about the intensity, persistence and limiting effects of her symptoms and determined to what extent they limited Brewington's ability to perform work-related activities.  R. 21-23.

When doing so, the ALJ assessed many of the factors set forth in 20 C.F.R. § 404.1529(c)(3)(i)–(vii).  Regarding treatment, the ALJ provided that Brewington's treatment course included rest, massage, and lumbar steroid injections which provided relief, although PT exacerbated her pain.  R. 22; 458; 649-50; 703.  Brewington also wore a hard cervical collar.  R. 22; 705.  The ALJ also discussed additional evidence about Brewington's upper extremity limitations from the medical source who performed Brewington's hand surgery including that by November 2022 she had regained a full range of motion.  R. 23; 635-42.

The ALJ also recounted Brewington's daily living activities when she considered Brewington's impairments and assessed her complaints of pain.  R. 21.  For example, the ALJ noted that Brewington claimed her impairments affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  R. 21; 199; 203.  She also testified it affected her sleeping, caring for personal needs, making meals, and completing household chores.  R. 21; 195-96.  The ALJ stated that Brewington attends church but has difficulty because of pain and sitting for long periods of time and reported wearing a back brace throughout the day.  R. 21;

197-98; 200; 202.  The ALJ noted aggravating factors, particularly that in July 2020 Brewington

"continued to complain of low back pain made worse by walking, standing, lying down, sitting,

bending, driving, weather changes, and lifting heavy objects."  R. 22; 703.

After reviewing the factors[17] and the objective medical evidence in the record as

required, the ALJ concluded that Brewington's allegations about the intensity, persistence, and

limiting effects of her symptoms were not entirely consistent with the record.  R. 22.  The ALJ

acknowledged and discussed Brewington's complaints of lower back pain preceding the AOD.

R. 22.  As of December 2020, despite restricted range of motion in her cervical spine and

positive straight leg raise testing bilaterally, the objective medical records showed Brewington

maintained normal grip strength, full motor strength in her left upper extremity, and normal

sensation in her bilateral upper extremities.  R. 23; 651.  Relatedly, Brewington had a fully

successful right trigger thumb release surgery in August 2020 and had no more triggering as of

November 2020.  R. 635-36; 640.  Importantly, the ALJ also noted Brewington only had slight

weakness in her lower extremities and never required an assistive device to walk.  R. 23; 651-52.

Although the record contains some conflicting evidence about Brewington's gait, the ALJ was

permitted to choose which evidence to credit and which evidence not to credit, so long as she did

not "reject evidence for no reason or for the wrong reason."  Rutherford, 399 F.3d at 554;

Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); see also Malloy v. Comm'r of Soc. Sec.,

306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted) (providing "presence of evidence in the

---

[17] The fact that an ALJ did not discuss all the factors of 20 C.F.R. § 404.1529, including
Brewington's type, dosage, effectiveness, and side effects of medication, does not warrant
remand if substantial evidence otherwise supports the ALJ's credibility determination.  See
Edghill v. Saul, No. 20-cv-461, 2021 WL 2434046, at *11 (D.N.J. June 15, 2021) (citing Lewis
v. Comm'r of Soc. Sec., No. 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016)).

record that supports a contrary conclusion does not undermine Commissioner's decision so long as the record provides substantial support for that decision").

Despite Brewington's back and spine limitations and pain, which the ALJ acknowledged in her opinion, the ALJ decided that Brewington was capable of restrictive light work and formulated an appropriate RFC.  R. 21-24; see also Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986) (finding claimant need not be pain free for ALJ to find her not disabled); see also Lyons v. Heckler, 638 F. Supp. 706, 710 (E.D. Pa. 1986) ("the degree of claimant's pain must be so severe and continuous as to render the claimant incapable of performing any occupation suitable to the claimant's age, education, work experience, and [RFC].").  Because the ALJ's conclusion regarding subjective symptoms of pain is supported by substantial evidence in the record, I must defer to that finding.  See Biestek, 139 S. Ct. at 1157; Horodenski, 215 F. App'x, at 189.

Brewington's final claim related to this issue is that the ALJ did not consider her strong work history when determining Brewington's credibility and subjective complaints of pain.  Doc. 8, at 18; see also 20 C.F.R. § 404.1529(c)(3).  The Commissioner argues the ALJ accounted for Brewington's work history in her decision when she recognized Brewington's earnings, discussed her continued work through July 2020, and mentioned Brewington's past relevant work.  Doc. 11, at 15-16.  Even assuming the ALJ did not explicitly consider Brewington's past work as a factor when assessing her subjective complaints of pain, the failure to do so was not error.  The ALJ provided substantial evidence in the record to support her findings regarding Brewington's subjective complaints of pain for the reasons outlined above.  See Zirnsak, 777 F.3d at 610; Biestek, 139 S. Ct. at 1154; see also Jackson v. Kijazaki, No. 23-626, 2023 WL 4672390, at *5 (E.D. Pa. July 20, 2023) (holding claimant did not show error when ALJ did not

discuss information about claimant's prior work record because "it is not clear that an ALJ is even permitted to conclude that a claimant is telling the truth about his symptoms on the basis that he has a strong work history" and it can be considered but only as an "indicator of the intensity and persistence of the claimant's symptoms"); Hyer v. Colvin, 72 F. Supp. 3d 479, 495-96 (D. Del. 2014) (finding no reason to disturb ALJ's findings when she did not discuss claimant's long work history when assessing subjective complaints because findings were supported by substantial evidence).

Because substantial evidence supports the ALJ's conclusion regarding Brewington's subjective complaints, and the Court should afford great deference to that finding, Brewington's challenges to the ALJ's analysis of her subjective symptoms of pain fail.

## VI.    **CONCLUSION**

The ALJ did not err when it considered and evaluated the opinion of NP Ingram. Substantial evidence supports the RFC. Additionally, the ALJ did not err when she assessed Brewington's subjective symptoms of pain.

For these reasons, Brewington's request for review (Doc. 1) is **DENIED**. An appropriate order accompanies this opinion.


                                        BY THE COURT:

                                        /s/ Craig M. Straw
                                        CRAIG M. STRAW
                                        U.S. Magistrate Judge